Mr. Pincus. Good morning, Your Honor, and may it please the Court, Andrew Pincus for AT&T. I think it's undisputed in this case that putting the National Labor Relations Act to one side, the Supreme Court's decisions in Concepcion and Italian colors would require enforcement of this contract and would preclude a legal rule that bars enforcement. So the whole question in this case is whether the NLRA makes a difference. Courts are often required to reconcile federal statutes. In this context, however, the Supreme Court has established a special rule for determining when another federal law renders unenforceable a contract whose enforcement is mandated by the Federal Arbitration Act, and that's, of course, a congressional command test applied most recently in CompuCredit but stemming from a long line of Supreme Court decisions. There isn't, as in some other contexts, a general reconciling of the two federal statutes. The Court has prescribed this specific test for the Federal Arbitration Act context, and we think the Board has not been able to satisfy that test. So the test, of course, is, is there a contrary congressional command that indicates that the otherwise applicable rules of the Federal Arbitration Act are displaced? And congressional is the key word there. Congress has to create the exception to the FAA. And looking at the National Labor Relations Act text in history, there's nothing about arbitration or litigation or class actions as the California Supreme Court, speaking through Judge Liu and the Fifth Circuit and D.R. Horton explained. The statutory reference to concerted activities is not enough. Just to further bolster that conclusion, we have the Supreme Court's reasoning in Italian colors and the reference in that case to its prior decision in Gilmer, indicating that statutory references even to class action proceedings would not be enough to displace the FAA. Mr. Pincus, can I, let me ask a question. So under your analysis, then, it matters not that traditionally the way we review interpretations of the NLRA by the Board is that we look at it with a fairly deferential lens and decide whether or not the Board's view of the statute was rational and reasonable. It sounds like, given this congressional override, that you say that doesn't apply in this context. Why is that? I think it doesn't apply for two reasons, Your Honor. First of all, we're dealing here with two statutes. We have the Federal Arbitration Act, which obviously the Board doesn't have any authority over. Well, before you get to that, so do you dispute the fact that if that standard of review applied, that the Board could rationally and reasonably conclude that a right of collective or class action litigation or arbitration falls within the scope of the collective protection provisions of the statute? We think that the Board couldn't determine that, but we also think even if the Board could determine that under... Could not. Could not. Why not? Because we don't think really there's any authority to indicate that Congress at that time was thinking about concerted litigation activity as opposed to other activity. The Supreme Court... Well, I mean, Congress, when it legislates, doesn't legislate in a static posture. It legislates, presumably, to account for things that might happen in the future. So the fact that that current Congressional body wasn't thinking about collective arbitration or class action arbitration doesn't mean that the language of the statute can't be interpreted to encompass it. It doesn't, and we also think that although my friends on the other side rely on the Eastex decision and the footnote in that case dealing with litigation, it's interesting that although the Supreme Court indicated that courts and the Board had interpreted the statute, it had some doubts about it. But let me move on to the second point, because I think the Court doesn't have to reach that conclusion, agree with me on that point, in order to rule against the Board in this case. Because even if the Board could interpret Section 7 to include class procedures, the question here isn't whether the Board can decide that. It's whether Congress itself has displaced the commands of the FAA. And for that, we only can look to the statute. I think the situation is analogous to one that this Court confronted in a case called Commonwealth against Riley, an en banc case of this Court, in which it was dealing with the Pennhurst clear statement rule about grant conditions for states. And the Court said even though the agency in that case had interpreted the statute to impose this, to permit this grant condition, there wasn't clear language in the statute, and that was the relevant inquiry. And so we think here what the Supreme Court has said is Congress has to make the decision to displace the FAA itself. The fact that it's delegated to the Board general authority to fill in the meaning of collective activities doesn't work. The Board's decision that collective activities includes class actions might mean, for example, that a contract outside the arbitration context that purported to ban class actions would violate the NLRA, because you don't have the FAA additional requirement of clear congressional command. There, it's just a question of, is this encompassed within Section 7? The Board hypothesizing for a minute that that decision could be upheld under Chevron outside of a context where the relevant legal rules requires Congress to focus on the question, the Board could do that. But here, the FAA perspires – I'm sorry – slightly different variant on that question. See if your answer is the same. Some circuits and frankly, I can't remember whether the NLRB takes this position now or not, but it has in the past. Its argument is that the FAA Savings Clause answers the argument on whether or not the FAA prevails as the contrary federal statute, because under that Savings Clause, it's deemed that the Section 7 and Section 8 rights are substantive, and therefore it makes an arbitration agreement that contradicts them illegal, and therefore non-enforceable under the Savings Clause. How do you answer that, or is your current answer answering that question? No, I think there's a separate line of argument. I think the line of argument we were just discussing is why the contrary congressional command test isn't met. And just if I may to finish up that point quickly, and I'll turn right to your question, that's because there's nothing in the statute about arbitration or class actions. And unlike other statutes, such as the Dodd-Frank provisions that the Supreme Court cited in CompuCredit, there's been no delegation to the Board of the ability to create exemptions from the FAA. So I think that deals with that part. Let's turn to that. Wait, wait. Judge Shedd, I want to hear the answer of Judge Agee, but I want to follow up your answer to Judge Diaz. Does this summarize your argument on that point, that where an agency may have the authority to interpret rationally a statute that they have jurisdiction over, that that deference normally means something to the court, but it really doesn't mean anything to the court when the court has to exercise its own authority in looking at another statute? I think that's right, Judge Shedd. And just to rephrase it to make sure that I'm agreeing, that I understand what I'm agreeing with, I think here what the Supreme Court has said is that Congress has to be the one to make the determination that the FAA rules won't apply. And so therefore, a general delegation of authority to the agency to fill in language, that itself doesn't make that decision. I know that. But who decides whether or not Congress has made that determination? I think the court decides that. And I think it's a different question than whether the agency has the deference that we've been discussing, because that really turns on what the statute itself says compared to what Congress says. Your view is, and I think I understand it is, is that while there is a deference given to an agency that overrides a lot of things, and maybe if that's the only thing being looked at, it trumps, but otherwise, if there's another statute, and then the courts have to decide what Congress did as far as the requirements, but if the courts have to decide the interplay between the statutes, that deference really doesn't matter much in our determination. That's your view of it. Exactly right, Your Honor. And just to put another reason on the table why that's right is because in making that decision, the court is deciding, does the language of the NLRA meet the FAA test? And so that's really a question about the test under the FAA that the Supreme Court has established, not something. And so I guess that makes sense. I want to make it clear. I want to make it clear. I'm not saying I agree with you. I just want to be sure I understood your answer to that question. I didn't want to cut off your response to Judge Agee, because I want to hear that response as well. Let me turn to Judge Agee's question, because the Board does rely on the Savings Clause. And we think this is the precise argument that the Supreme Court rejected in Concepcion, and I think it's important if I can lay it out. So in Concepcion, the argument of the Arbitration Clause in that case was, California has a statute that bars the enforcement of exculpatory contracts. A contract with a class waiver in this particular context is exculpatory, and therefore, the arbitration agreement with the class waiver is an illegal contract and falls within the Savings Clause. And the Supreme Court said, no, the contract is enforceable. You can't rely on a general rule and say that a characteristic of the agreement that's protected by the FAA is the reason for the application of the general rule. So the Supreme Court said in Concepcion, well, the reason you're saying this arbitration agreement is illegal is because you think there shouldn't be an enforcement of an arbitration agreement with class waivers. But class waivers are an integral aspect of arbitration, and therefore, you're really targeting arbitration with this specific application of the general rule. That's exactly what the NLRB is doing here. It's saying general rule about the unenforceability of illegal contracts. We have this specific rule about unenforceable arbitration agreements, and therefore, it falls within the Savings Clause. It doesn't for exactly that same reason. And I think the broad implications of the NLRB's rule tell you why it's wrong, because if the NLRB was right, a state, and remember, Section 2 applies equally to states and the federal government. There's no more generous reading of Section 2 to apply the Savings Clause more generally to federal law. So a state could pass a statute declaring illegal any contract that has advanced waivers of a jury determination of fact. Say, we don't want that. That's an illegal contract under our state law, and that contract, of course, that rule of law would ban all arbitration agreements. Some circuits, at least one circuit in the NLRB at some points has said, well, if you take that viewpoint, then the Savings Clause serves no purpose and no circumstance. What's your response to that? My response is what the Savings Clause says is such grounds as exist in law or equity for the revocation of any contract. So if you have a, if a state has a rule, for example, a capacity rule on contracts, not a specific rule for arbitration contracts, but a general rule about capacity to enter into contracts, and that rule is violated with respect to an arbitration agreement, of course that can be applied. If the state has a general rule about consideration, of course that can be applied. If the state has a general rule about consideration, of course that can be applied. So there are lots of areas where across-the-board contract principles can be applied. The problem here is a contract principle that, sure, it can be generalized, but the particular principle being applied signals that arbitration agreement. It seems to me a little bit ironic that a statute like the FAA, which is intended to promote arbitration, is being used to bar a provision, a reasonable provision, that is competing of the, of a, of another federal statute that, in fact, is intended to enlarge the scope of the arbitral process, not limit it. And it seems to me that the Lewis Court did an admirable job of sort of reconciling these competing statutes and not reading one to the exclusion of the other. What did Judge Wood get wrong in that case? Well, I think Judge Wood got wrong both of the things that we've been talking about. First of all, I think she didn't apply the clear congressional command test. I think she elided that, and that's really the test for reconciling two federal statutes. And you mentioned the authority of the Supreme Court authority for that language. What is it again? It's in the CompuCredit case, and we discuss a number of other cases in our brief that precede CompuCredit. In what context was the Supreme Court talking about the clear congressional override? The question in that case was whether a claim under the CROA, the credit reform, I'm going to get the acronym wrong, was arbitrable, or whether it had been excluded from arbitration, because in that case the statute made a number of references to the use of court procedures and to other references to courts. And so the argument against arbitration was that this statute has, the statute excludes these claims from arbitration, and the court said no, it doesn't. If I can, I want to just say two words about the other thing that Judge Wood got wrong, which is the substance procedure distinction that I'm sure we'll hear about when my friends step up. A couple of things about that. First of all, many courts have said in a number of contexts, that's a distinction that really doesn't have a lot of substance until you sort of know what you're dealing with and what you're dividing. Here, of course, the protection for concerted activities is in a separate statute, but that can't be the rule. In Gilmer, the ADEA, the reference to the ADEA that the court referred to, referenced class procedures, and the court said that's not a reason to find that the FAA doesn't apply. So the fact that it's a separate statute can't possibly be the reason. We think the distinction between the inability to bring a substantive cause of action, can you actually bring your antitrust claim? Can you bring your CROA claim? Can you bring your claim under the discrimination laws? In that situation, the court has looked at whether arbitration prevents the effective indication of that underlying substantive claim. So we think that doesn't apply for that reason, but even if it did apply, I just want to reference Judge Akuta's discussion of this question in her dissent in the Ninth Circuit case, the Ernst and Young case, because what she explains is even if it did apply, there are many ways to vindicate collective action rights other than class actions, something that Justice Kagan also talked about in her dissent in the Italian Colors case. So even if that effective indication test applied, even if this was a substantive right, that right still can be vindicated. And I'd like to reserve the balance of my time. Thank you very much. Mr. Heller. Good morning. May it please the court, Joel Heller for the National Labor Relations Board. The NLRA protects employees' right to act collectively, but employees covered by AT&T's policy must act individually. The policy thus violates the... Well, I don't think that's fair because they have a right to opt out, don't they? So the employees who are covered by the policy who have not opted out, they are required to act individually. And as we can get into later, if the court wishes, there's really no difference... Well, yeah, I guess that begs the question. So is that a difference that makes a difference? It does not make a difference. The Supreme Court long ago in J.I. Case said that a individual contract that interferes with Section 7 rights is a violation of the NLRA even if it is not a condition of employment. And this is not a condition of employment. It's voluntary, but that doesn't make a difference. The impact on Section 7 rights, the limits, the interference with employees' right to engage in concerted legal action is the same regardless of how that waiver is secured. So what we have here... Okay, you said that, but you haven't explained why. I mean, the judge, I'm having a senior moment here in the Ninth Circuit, concluded that as a practical matter, if you're given an opportunity, Judge Watford, given an opportunity to opt out, there really isn't much of any coercion or interference as a practical matter. That seems to make intuitive sense to me. You've got this right. You've got the right to exercise it or not. What's wrong with giving employees a choice in that context? So employees have a choice whether to engage in or refrain from engaging in concerted legal action, just like any kind of concerted action, at the time when they are faced with that decision. But AT&T's policy is a prospective waiver. They are forced to make that decision at the outset and to forswear the opportunity to engage in any type of concerted action regardless of the circumstances. I would point out that the John Muhammadi case in the Ninth Circuit was interpreting Section 8A1, but they were doing so in a world in which the Board had not yet weighed in on whether an opt-out provision saved this kind of contract from violating the NLRA. The Board has subsequently ruled that it does. And under Brand X principles, a superseding agency interpretation gets Chevron deference regardless of whether there's an earlier decision from the court. Well, to follow the questions that were asked of opposing counsel, what difference does it make that the NLRB has made decisions on how it interprets the interaction of another jurisdictions act? What difference is owed to an agency that's interpreting a statute that's outside its scope of referral? So there are really two halves to this case. One is whether concerted legal action is protected activity under Section 7, and whether prospective individual waivers... I don't know that AT&T contests that. Well, my point is that as to the interpretation of Section 7, whether this is covered activity, and whether AT&T's policy violates Section 8A1, which prohibits interference with that activity, those are issues on which the Board receives deference under Chevron principles because it is interpreting the NLRA. We're talking about what does the grant of rights in Section 7 cover? What does the proscription in 8A1 cover? How do they get deference with respect to another statute that brings in a completely substantively different area? That's the point I was trying to make with the two halves of this case. The two issues I was just talking about, the agency gets deference. As to the FAA, the NLRB does not get deference because it is outside of its interpretive scope. But once you've determined that this is a Section 7 right, and that the contract is an illegal contract because it is in which the Board gets deference, that does most of the work in this case because it establishes that AT&T's policy is an illegal contract. And as well as that was- No, no, no. This judge said, but you haven't answered the question. What if the, doesn't that require an interpretation of the Arbitration Act and what that savings clause means? The National Labor Relations Board has to determine what that means in the context of that act. But that's interpreting a separate act. Once you've- But why do you get any deference as to how you interpret that act? The Board does not get deference. You don't, do you? No. And we don't claim that we do. My point is that the areas in which the Board does get deference get you to the point that this is an illegal contract under the NLRA. The question then becomes, and this is the area where we agree that there is no agency deference, whether it should make a difference that this, that the FAA is involved. Whether a federal court should enforce an illegal contract just because it also uses the word arbitration. And given the FAA's saving clause, the answer is no. And the saving clause- But, no, no, but under whose interpretation of that agency, of the FAA's savings clause? The court's. You don't get, the NLRB doesn't get any deference on that at all. We agree, but that doesn't mean the NLRB is wrong. We agree that- No, no, no, no. I didn't say that. But when we look at what the Federal Arbitration Act means in light of whatever the NLRB says it determines about the NLRA, that issue doesn't get any deference, does it? No. We agree that Boards not get deference on the meaning of the FAA. No, no, no. The interaction of the two. Yes. Not just the meaning, the interaction of the two. I didn't mean to make a separate point, yes, as to the interaction between the two. So why does the savings clause under the FAA give you the result that you want? Because the savings clause says that arbitration agreements are enforceable save upon grounds that exist at law or in equity for the revocation of any contract. It doesn't say state law or equity. So it can be illegal under Federal law grounds. Well, that's just a circular way of avoiding the deference question because you're saying that in the abstract the Board gets deference to determine what's illegal under the NLRA and therefore that settles the question with respect to the interaction with another Federal statute. It is the- Tell us why that- I mean, it just seems like to me you're engaging in a circular backdoor reasoning to say, well, this is why it's illegal and therefore fits into the savings clause. The court can certainly- the question for whether a contract that is illegal under the NLRA fits within the savings clause is a question for this Court. The Board does not get deference on to that as to that issue. But the way you've defined it, the question is already answered. Well, we agree that that is the case. We think it's an easy case in that sense because- Well, the savings clause has to mean something, right? Yes. It's in the text of the FAA. Congress intended it to have substance. So tell me how you distinguish Concepcion then? Sure. Because the Court apparently, if you read it literally, suggested that savings clause or not, arbitration prevails. So the reason why this case is different than Concepcion is a couple points. One is that unlike the policy at stake in Concepcion, the California Discover Bank Rule, which was this generalized, judge-made policy external to any statute that meant to incentivize low-value claims, to encourage, to make them affordable. That's not the Board's argument here. What we have here is the National Labor Relations Act, which protects the right to engage in concerted activity and makes it an enforceable right by making interference with that right illegal. Well, the fact that it's a different mode of analysis doesn't really answer the question as to the holding in Concepcion, which it read broadly, I suppose, defeats your case. Well, I think there has to be consideration given to the fact that this is the concerted activity under the NLRA, is the core of the Act, and it is enforceable in that a violation of that is subject to a cease and desist order. We don't have that in Concepcion, where under California consumer protection laws, there was not a right to engage in concerted activity. Concerted activity may have made, or the lack of concerted activity may have made the case for the plaintiffs in Concepcion inconvenient, but it didn't make it illegal the way we have under the NLRA. I would also point out that unlike in Concepcion, and a lot of the Court's broad language was talking about this point, the NLRA's position does not require class arbitration. Concepcion talked about how class arbitration was inconsistent with individual arbitration, which is what the Court said the FAA was meant to protect. But under the Board's theory, there is not the same requirement of class arbitration. The Board has said that an employer can require individual arbitration, so long as there is some other forum open for concerted legal action. As I've understood the Board's position, perhaps incorrectly with respect to Concepcion, that position was that, well, this is a State rule, and therefore that's different from other situations. But the strength of the Board's determination that the NLRB prevails and has this strong core principle, it seems like to me you could make the same argument that with respect to the Credit Rights Act that was involved in CompuCredit or the Age Discrimination Employment Act, those were some pretty heavy-duty substantive provisions that the Congress had adopted and accorded specific statutory rights. And particularly in Gilmer, there was language that said that the aggrieved parties, any one or more employees for and in behalf of himself or themselves and others similarly situated, had specific rights of action. But the Supreme Court said that's not enough. So the Age Discrimination Act protects employees against age discrimination. The NLRB protects employees against interference with the right to engage in concerted activity. So under the NLRA, unlike ADEA or CROA, concerted activity is the animating principle of the Act. And if you interfere with that, it is illegal. You can go- But we've got specific language in that case that deals with concerted, in the Gilmer case, that deals with concerted activity by aggrieved plaintiffs. Concerted activity is an option under the ADEA. It is permitted, but it is not guaranteed in the same way it is under the NLRA. And the language, I think you're referring to in Gilmer and CompuCredit, that was getting into the question of whether there was a contrary congressional command. And we disagree with AT&T that that is the only analysis in this case because there is the general principle from the courts that two federal statutes to the effect possible must both be given effect. And that language has been quoted in FAA cases, including the Weimar-Seguros case. And so it seems to me your approach is generally that a federal agency can take actions within its purview in a way to define this authority by how they see terms or define terms so that they can eliminate their coverage by any other federal statute. Why couldn't they do that? Within their realm of deference as they look at their statute, under your view, they could say as an agency using our discretion, we decide that although there's a term in our statute which would mean that we would be covered by another statute, we define that in a way that is inconsistent with and is not covered by that other federal statute. Why doesn't that, when you really run that scheme out, why doesn't that give any agency the authority under the deferential review, as long as it's not completely arbitrary, that they were just to eliminate themselves from being covered or having to answer under any other federal statute? I don't think that's the... Isn't that the natural consequence of your argument, isn't it? I don't think so, because the saving clause is in the FAA. It's not, the board is not interpreting something internal to itself. No, no, no, no, no, but my point is the board has defined something within its purview as illegal that they then say saves them under the savings clause. Isn't that your argument? Correct. I mean, it is sort of the court to say whether it fits in the saving clause. That's my point. Then under your theory, an agency could look at another statute that has some provision which may cover them, but they could define their own authority in such a way as to say we step out because this is not picked up in that other statute. That's what the board is doing here. Does that question lose you? Have I lost you with that question? You've lost me slightly. Because your argument is, as I understand it, we have defined something within our purview, the board has, as being illegal. And because we say this is illegal, the savings clause, our definition now fits in such a way in the savings clause that the savings clause gives us the right to stand alone. The FAA doesn't affect us. That's your argument, isn't it? That is how the two statutes stand together, if the court agrees, because it's the court's role to make that balance. But I would also say that the opposite is also true. AT&T cannot use the FAA to say the NLRA does not apply. It cannot renounce the authority of a federal statute simply by using the word arbitration. I know that. So doesn't it? I want to take you back to one other point, and then I'll defer back to my colleagues. So then is the point, the resolution, that the FAA and what that language means has to be decided in and apart from what the NLRB says it means? I see my time is up. As to what that savings clause means, that has to be decided separate from anything the NLRB says about it, or defines a term used therein. Yes. What the FAA says is interpreted independently of what the NLRA says. But the NLRB does not The NLRA, interpretation of the NLRA gets you to a certain point. It gets you to the point that this contract violates 8A1. The court then steps in, and deference on that point, but the court then steps in and says, okay, so we have an illegal contract under 8A1. Does that fit within the savings clause? And well established No, no. Is that the type of illegal that FAA is talking about? Or is FAA talking about general types of illegal contracts and not an agency specifically defined illegal contract? Isn't that the question? Yes. It's the question for the court of whether this is the kind of illegal contract that courts should enforce because they also contain the word arbitration. Are there further questions? Thank you very much. Mr. Becker. Thank you, Your Honors. My name is Craig Becker. I represent the two intervening AT&T Mobility employees. I'd like to make two points that my colleague didn't have time to reach, but I'd like to start with a hypothetical, which I think Let me ask you just kind of a general question to start with. Obviously, there are very complicated issues on both sides, but one thing that troubles me about the general thrust in the debate here is that when I look at what the Supreme Court has determined when it has interpreted over the years the Federal Arbitration Act and putting aside a case like Conception that involved a state rule, whenever some other federal statute has come up against the Federal Arbitration Act, even some that seem to have very specific language in it that says this is a specific right and the parties that are aggrieved, whether it's age discrimination, credit rights, whatever, the FAA has always been the statute that prevailed. And in the CompuCredit case, for instance, the court even gave a couple of examples of statutes where the language was so specific, no pre-dispute arbitration agreement shall be valid, that would work to defeat the FAA. And you don't have that language in the National Labor Relations Act, which of course Congress could add if it wanted to. But that's one of the things that just because of a general thesis bothers me here is that the Supreme Court seems to have really come down strongly, unanimously, case-wise over the years in favor of the Federal Arbitration Act in response to statutes that seem to be much stronger than the NLRA. Your Honor, I think that is exactly the right question. I'd like to go to exactly where Mr. Pincus started to answer it. Does it matter that the NLRA is the statute at issue? And I think the answer is absolutely. And the difference is the language that the court was looking at in all those other cases was not the language defining the core substantive right. What the court has also said in all those cases again and again is that you can agree to arbitration, to waive your right to go to court, no matter how strong the language is in 216B of the Fair Labor Standards Act, for example, allowing class or collective action. So long as you don't waive the core substantive right to be paid the minimum wage, to be free of age discrimination. Here, the core substantive right is in Section 7. Those procedural rights are in Section 10 of the NLRA, the right to file a charge, et cetera. The core substantive right is the right to join unions, to engage in collective bargaining, and to engage in other concerted activities for other parties. Now, of all these cases over the years with the FAA, why hasn't the Supreme Court said something like that? I think they have said something like that, Your Honor. For example, in Italian Colors, and I quote, the court said, the exception would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. That is exactly what this agreement does. Because the statutory right here that the Board has found, and it's not simply in this line of cases, the Board has found that you have a right to engage in concerted legal activity from almost its inception. And numerous courts of appeals have upheld  Now it seems like we're right back to the same question that we've been asking over and over that deals with, so if that's the Board's interpretation, what difference does it make? It's dealing with a separate statute. Well, the separate statute, Your Honor, there's two separate arguments about that separate statute. One is the Savings Clause argument. The Board has held that this agreement is in favor of Board decisions and that have been sustained by the Court of Appeals and that the Supreme Court has spoken favorably about in East Ex. And then it's up to this Court to decide whether that form of illegality fits into the Savings Clause. But there's a separate argument because all those line of Supreme Court decisions that you've referred to have made clear that while you can waive your procedural right, the mechanisms, even if they're explicitly stated in the statute for protecting your substantive right, you can't waive the substantive right. And that's why in answer to my friend to the left's point, does the NLR make a difference? The answer is it makes all the difference. Because here, that is what is being waived. It's not the procedural right, the right to go to the Board to vindicate your Section 7 rights. It's a part of your Section 7 rights. Let's imagine that the agreement said So aren't they waiving their right to proceed under Rule 23? They're waiving their right to proceed under 216B of the Fair Labor Standards Act, under Rule 23, to join their actions together. All of those forms of concerted legal activity, they are barred. Judge Shedd has a question. For those people who opted out of this arbitration provision, do they still have the right for concerted activity? Yes, they do, Your Honor. Okay. So in other words, what we have is a situation where some people have waived their right to concerted activity, but the arbitration provision doesn't eliminate concerted activity. You just have to keep it. You just opt out, and then you have every right you had before. That's correct, Your Honor. And that obviously is a critical piece of the case, which is the opt-out window. And we would suggest that it would be perfectly permissible for AT&T to establish a truly voluntary system. That is to say, we have a system of arbitration. You can invoke it as an individual. If you have a dispute, we think it's efficient, and it's going to be faster and cheaper for you. That is, they can urge their employees to go to arbitration, just like they can urge them not to join a union. But they can't do it. So in other words, I want you now to very clearly, your issue with this is not the fact that some workers can give up their rights and go to arbitration. That doesn't violate the Act, in your opinion. That doesn't violate the Act. No, Your Honor. Just as a worker can decide not to join a union. Wait, wait, wait. And to the extent the NLRB said having arbitration would violate rights and would be illegal, you would disagree with the NLRB? No, Your Honor. I think what the NLRB has said is that the employer cannot impose that agreement and then say, if you want to get your rights back, you need to step forward. No, no, no, no, no. No, I'm asking you, and you think the NLRB would consistently say, you were saying, I know you don't represent them, that if the manner to get into that group that had waived, you know, waived into arbitration, in other words, they accepted arbitration, that's perfectly fine. That is, would it be illegal? That wouldn't violate the Act in any way. If what AT&T had said in its notice to employees was, we have this system, when you have a dispute. No, no, just answer my question. You don't have a problem with the existence of a group of people who've given up their rights. You just have a problem with the way AT&T did it. Well, I think you have a problem with the way that it was done prospectively. Isn't that fair? I have a problem consistent with a long line of NLRB cases with a system which says, by coming to work here, you give up your rights to join a union, to raise and collect the bargaining, unless you step forward and take your rights back. Right. That is coercive, not simply under decision in this case, but under a long line of board cases. Let's imagine it was collective bargaining. Let me make sure I understand your point was that if and when a dispute materializes, AT&T could come forward and tell that employee, you have the right to individually arbitrate. You also have the right to collectively arbitrate. Make your decision at that point. That would be fine. That would be fine. That would be just like arguing a union election is coming up and we think you should vote no. It's the prospective waiver that is problematic. It's the prospective waiver in which employees have to affirmatively step forward as individuals in order to get their rights back. Do you have a problem with an opt-in provision? An opt-in provision on arbitration? Then you wouldn't, would you? An opt-in provision? It would be prospective, but you would opt into it, not opt out of it. Would that be a problem? It would be a closure case, but I think it would still be problematical under the existing law because the law that the board has established is that employees should not have to take affirmative action before the question arises to preserve their rights. That is, you shouldn't have to say at the beginning of your employment, I want to preserve my right to join a union because sometime down the road, I may feel it's important. You wouldn't have to take. No, no, no. It's not an opt-out. It's an opt-in. It's an opt-in. I understand, Your Honor. They know what their rights are, but they say, you know what? It suits us to be in arbitration. We agree to that. You have a problem with that as well? Yes, I do, Your Honor. In other words, you do have a problem with arbitration because you can't get in. The only arbitration you don't mind is, as Judge Diaz points out, when it arises to you individually, you could opt for it over your other rights, but any other kind of arbitration, there is a problem with it. We think arbitration is an excellent system. So that would be yes, as is the problem with arbitration? We think it's admirable that it's offered to employees. No, no, no. I said, do you have a problem then with any type of arbitration other than the type that Judge Diaz described? We do, Your Honor. That is, it's sent to two by both parties when a dispute arises. Yeah, but you start off by saying, and the way they did it, the way they did it with the opt-out and the short window, that doesn't really matter to you, does it? What matters is whether employees are entering into arbitration as an individual choice when the dispute arises, as opposed to being asked to make a choice with the individual choice. I know that. I hear what you're saying now, but you started off your argument by going, the way they did it with the short window, that's not really your argument, is it? You don't like that, but that's not really your argument. Your argument was they did it as a group rather than as each individual incident subject to arbitration possibly came up. That's really your argument, isn't it? My argument is about this case. And in this case, the right was taken away from all employees and employees had to step forward as individuals to get the right back. And that is clearly unlawful. No, that's not really your, you don't like, even if people had to step up or people had to opt-in or opt-out, I think actually maybe, I think Judge Diaz may have put his finger on your argument better than you have it. It's perspective that you don't like. It's the agreement now to perspective arbitration, no matter how it's done, opt-in, opt-out, short window, big window, none of that really matters to your argument, does it? That might be the facts of this case. You just don't like the perspective, collective aspect, or even individual perspective. You just don't, you don't think that's legal, correct? No, Your Honor. The core of what we believe is illegal is what the Congress has made clear has been illegal even before the National Labor Relations Act, which is an agreement between an employer and employees in which employees purport to waive their rights. That's what is a problem. Employees can waive their rights, of course. They have a right not to engage in concerted activity. But what's illegal, and the Norris LaGuardia Act made this clear even before the National Labor Relations Act was adopted, is an agreement where the employer secures that waiver, even if employees can opt out from it. So what's the core of the illegality is the agreement where the employer attempts to secure that waiver, right? What's not illegal is an individual's decision separate from the employer to not join a union, to not engage in collective bargaining, or to arbitrate as an individual. It's the agreement which makes it all awful. Judge Shedd, do you have any more questions? I do not, thank you. Thank you, Your Honor. Thank you very much. Thank you. Mr. Pincus, you've got some time in rebuttal. Thank you, Your Honor. I'd like to start with the substance procedure distinction because I think it's important. I think Mr. Becker's view is because this concerted activity is in a separate statute, that's one of the indications that it's substantive, but it surely can't be that if Rule 23 were enacted separately, that would transform it from something that's procedural into something that's substantive. And in fact, with respect to the statute in the Emporium Capwell Company case, which is at 420 U.S., the Supreme Court addressed this question of the nature of the NLRA rights. And at page 62 and at page 69, the court clearly said they're procedural. The purpose of these protections are to allow workers to vindicate other rights. What was that slide again? The case is Capwell, and the language that I'm referring to is at 420 U.S. 69, and then there's some additional language at 420 U.S. 62. At 69, this is a case about employees' ability to vindicate the employee's substantive right to be free of racial discrimination with the procedures available under the NLRA for securing these rights. So I think it's pretty clear that the NLRA is a mechanism for securing a lot of other rights by acting collectively, just like Rule 23 is a mechanism for securing lots of other litigation rights by allowing people to act collectively. They really don't qualify as substantive under any realistic standard. And I think that segues into the returning to our discussion about Section 2 and the Savings Clause. I think it's important to focus on the language of the Savings Clause, which talks about save upon such grounds as exist at law or in equity for the revocation of any contract. The any contract language is important because that's the rule that prevents targeting of arbitration agreements by state law or federal law rules that are neutral, but target arbitration. That's exactly what the Supreme Court said was the problem in Concepcion. Although framed about class waivers, the Court said this because it targets a characteristic of arbitration, the ability to arbitrate individually, this frustrates the purpose of the act. And so I think under the NLRB's theory, however, if California in the wake of Concepcion had enacted the consumer concerted action law that said we want consumers to be able to act concertedly in lots of different ways, and one of those ways is through class actions, similar language to the NLRA language we have here, I think that the Board's view would compel the conclusion that that statute could be applied to bar the enforcement of the very arbitration agreements that Concepcion said were enforceable. And I think that just shows you, A, the breadth of what the Board is saying because, of course, all of its arguments apply to states, not just to the federal government and its agencies. But it also shows you how inconsistent that argument is with what the Court said in Concepcion because what the Court said in Concepcion is we can't allow the savings clause to be used to save state law rules that are going to frustrate the underlying purposes of the exactly the same characteristic of arbitration. The NLRB says we're declaring illegal contracts that include class waivers, but that frustrates the purpose of arbitration in exactly the same way. Unless the Court has any further questions, I'm happy to submit the case. Thank you. I want to compliment counsel on both sides for excellent arguments. It's an intriguing and difficult issue, and if you believe the commentators, the Supreme Court might get to this sooner than later, the number of cases circulating around the country. So we'll see. So I'll ask the clerk to adjourn court, and we'll come down and greet counsel. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Dennis W. Shedd, G. Steven Agee, Albert Diaz